We'll hear argument now in the case of United States v. Sorensen. Ms. Edinger Ms. Edinger So Ms. Edinger, can I tell you, just put it on the table since this is a short argument. There are two concerns I have about your position. The first is this global notion that courts get to make up affirmative defenses whenever they want to. And that, in my mind, is in some tension with the message that we've gotten loud and clear from the Supreme Court that it's the text of statutes that matters and other people amend them. The second thing that worries me is a more granular thing. Even if we were to agree with you that there is an affirmative innocent possession defense, Mr. Sorensen's behavior at the Goodwill store, shoving the gun behind something on the shelf and racing off and everything, he doesn't strike me as the right candidate for this, even if there were one. So if you could address those points, I would be appreciative. Absolutely, Your Honor. So starting with this idea of courts legislating and that being in tension with how we generally interpret statutes, I appreciate that angst, but I think it's very clear in cases like Dixon from the Supreme Court that it is the judiciary's job to develop affirmative defenses. The judiciary or the Supreme Court? Not quite the same thing. Fair. The Supreme Court is giving instructions to the federal courts. But are they the only ones who can make up the affirmative defense? I'm thinking of Burlington Industries against Elearth. They make up affirmative defenses some of the time, but are we lower court judges free to just tack on affirmative defenses when we want to? It is this court's responsibility to do that, and this court has followed instructions from cases like Dixon in other cases. So I would point the court to Waldman or to Dingwall more recently. This court's responsibility is to parse out does the defense exist and what are its elements. Going to your second question about the proffer, why Mr. Sorensen, why this case? So accepting the three-part test that we've outlined, Mr. Sorensen's conduct does provide more than a scintilla of evidence for each of the elements of that case. So starting with he obtained the firearm innocently, I don't think there's an argument about that from the government, he happens upon it in a car. But moving to what happens next, was it transitory? Absolutely. He finds it at about 12.50 p.m. He realizes I can't have this, I have to dispose of it safely. A few minutes before 1 o'clock p.m. he's already in the Goodwill headed to the restorative justice center trying repeatedly for about 25 minutes to find somebody who's in charge who he knows can safely, to whom he can safely surrender this firearm. But there is no, like, box that he thought would be there, you know, put your contraband here. I mean, you know, I just walked through O'Hare yesterday and there are little boxes all over the place, you know, the cannabis, you know, forgiveness zone or whatever they're calling it. But he didn't find what he thought he was going to find in the Goodwill. His proffer, which at this point in the litigation the court accepts is true, is that he had seen a box before in the restorative justice center. That is what he is looking for when he goes there. And if he can't find the box, he's looking for somebody in charge who can direct him to it. So given that we're accepting his proffer is true, I know the government will push back on that point, but we don't weigh the government's version against our version at this point. And so he is repeatedly, three times, trying to safely and reasonably, responsibly surrender this firearm. At some point the police do interact with his. How in the world is it responsible or reasonable to put a firearm on a shelf in a public place rather than turn it into the police? Certainly, Your Honor. His intention was to deliver it to the restorative justice center. When he sees his girlfriend interacting with the police, he panics and he does leave the firearm on the shelf. And he does hide himself and then leave the store. He then interacts with the police shortly thereafter, has a debrief, and takes them back to where the firearm is located on the shelf. Is it perfect? No. Is it reasonable? Yes. And that's a jury question. We're here to talk about is there a scintilla? I don't understand why there's a jury question here. I'm thinking principally of the Supreme Court's decision in the United States against Bailey back in 1980, which says that there is a defense to the charge of escape, that you needed to escape in order to protect your own safety. And the justices said, but in order for that defense to succeed, you must surrender to the police as quickly as you can. If you're being abused in place A, you must surrender to the police. It didn't say do any reasonable thing you want. It didn't say go home and relax. It said escape and go straight to the police. Otherwise, no defense. Why isn't that equally the problem here? If you steal a car and find a firearm in it, you have to take it to the police. Let me go back to Bailey. So Bailey's talking about a necessity to rest defense, and that is different in kind from the affirmative innocent possession defense. And the key component is then when we're in— Could I just ask why? Sure. It's a different defense than innocent owner. But I think what Judge Easterbrook is asking about, what's the appropriate next step for the person to take? When Mr. Sorensen discovers this gun, why wasn't his obligation to turn the car around and drive to the nearest police station and be sure that he was at a place that he could lawfully get rid of it? Right. And so the necessity defense and duress defenses talk about no reasonable alternative, no legal reasonable alternative. This is different. It doesn't have that component, partly because you— I don't understand. It doesn't have that component. You are asking us to invent an extra statutory defense. That's fine. Courts do it. Self-defense is an extra statutory defense. But the last time the Supreme Court invented an extra statutory defense, it said the condition is go straight to the police. If we invent an extra statutory defense, why shouldn't we say the same thing? The argument in the amicus brief that people are estranged from the police, I imagine felons are estranged from the police. That's how they got to be felons. But if that's a condition on the kind of defense that judges can create, why isn't it equally a condition here? That's my question. I don't read Bailey to say. Bailey says in that context with escape from jail, you do have to surrender and go to the police. Dixon also says that when this court or any federal court is thinking about does a defense exist, what are its elements, we do it in an offense-specific context. For felon in possession statute, there's no reason that there needs to be direct police contact. Reasonableness remains the lodestar. Look, this defense doesn't exist. You are asking us to create one, and you're asking us to create one without a surrender to the police requirement. There are no elements of a nonexistent defense. If we create one, we have to decide what they are. And I'm asking why surrendering the gun to the police at the first opportunity shouldn't be a requirement of a newly created defense. It shouldn't be a requirement because it doesn't further the statute's purpose. The statute's purpose is to keep guns out of the hands of felons. Absolutely. And surrendering it to the police at the first opportunity does that. It would. It also makes it less possible for the felon to say, as Mr. Sorenson did, oh, well, it's true, I was carting around a gun for some time, but I was reasonably trying to dispose of it. That has, well, a whiff of afterthought about it. The second part of your question I think goes to Floodgate's concerns that we're going to see hundreds of trials now that people are just going to claim, oh, I was trying to take it to the police, I was toting it around for months, I think Mr. Elder's case is that way. That is not what this defense would do. The Floodgate's concerns are overblown. Statistics alone gets us there. There's been 29 years of litigating this issue. It's come up in less than a dozen instances. Not every defendant is going to want to sign an affidavit and then take the stand to explain himself whenever he accidentally came into possession of a firearm. This is not going to change the instance in Green. He's not going to a shooting range. Mr. Jackson's not going to pawn a gun off on another felon. Kilgore can't abandon a gun in a snowbank. There are multiple instances when this has come up, and it's not sufficient. But here we've proffered more than a scintilla of evidence for each element of the defense, and it's reasonable to hand a gun to somebody other than the police. Surely the police would be sufficient. I just don't see why reasonable should be enough. As you know, actually, the party's briefs discuss this. There have been decisions in the Seventh Circuit saying, well, look, there is no innocent possession defense yet, but if we were to create one, turning the gun into the police at the first opportunity would be an element of that defense. So you're asking us not only to create a defense that's extra statutory, but to go back on what previous panels have said about what the elements of that defense would be. It's very hard to do one without doing both at the same time. I see my time has expired. As long as we're talking, you can talk. Great. So to push back, there's no precedent that says what the elements absolutely would be. Certainly in past decisions, this court has looked at the D.C. Circuit's test for guidance and said on the facts presented, accepting them as true, those elements aren't satisfied, and that's the Mason test. I thought your key argument in response to what Judge Easterbrook said is that if there are a wider array of acceptable places for the felon to dispose of the illegal gun, like Goodwill or maybe a church or, you know, the police office, something, the public library, for all I know, it sounds all terrible. But anyway, the more places that they can get rid of it, the quicker they'll get rid of it. And so you're leaving the door open, and they may be afraid to give it to the police because of the incriminating association. Yes, Your Honor. Exactly, and that goes back to furthering the statute's purpose. When we talk about, you know, why move beyond just the police, it is that point, but it also comes back to the Supreme Court's instruction in Kirby when they talk about sensible constructions of statutes. We could go back to the concept of possession and what does possession mean. We're not contravening the elements of the government's case. We're talking about what an ordinary person would understand it to mean and whether there's room in the statute for this defense. There is, and it should include a reasonable array of people beyond the police for the reasons that Your Honor just mentioned. Thank you, Ms. Ettinger. Thank you. Mr. Steven. Thank you. May it please the Court, the government appears by Corey Steffen. This circuit has consistently declined to adopt an innocent possession defense. It's not the law here and the government does not concede that it's an open question. Even if that were the case, as I think this Court has alluded to here this morning, there are some concerns about what the defendant is asking for. In this case, the facts do not fall under even the Mason test, which is from the D.C. Circuit. Here the defendant did not act immediately and he did not act reasonably. And the defendant not only argues for the Mason test, but he also argues to expand upon that with something that is not a reasonable addition to the Mason test. Now, as we've talked about a little bit here and I've covered in my brief, the Court here has consistently declined to adopt an innocent possession defense. And one of the strings that's kind of consistent is factually the similarity between some of the things that happened in those cases and Mr. Sorensen's cases. But, Mr. Steven, I think I'll go back to what my original concern was about courts making these things up out of whole cloth. It does seem to me possible, and I can think of a precedent for it, if an innocent possessor defense to this 922G offense were to be recognized by a legislature, it would be pretty easy for a legislature, Congress obviously in this case, to say, you know, you can give it to the police, but you can give it to X, Y, and Z places as well. That's what happens with abandoned babies. You know, there are safe places that you can leave an abandoned baby, you know, in a fire department or in a hospital lobby or in a police station. It's just listed. So nobody has to go into some complicated reasonableness inquiry to decide, well, was this choice reasonable or was that choice reasonable? They're just some approved places. So I'm a little concerned about creating this. If you were to create it, though, why isn't Ms. Edinger right? The more ways you can allow this felon to get rid of the gun, the sooner you don't have a felon in possession. Because then we end up with somebody leaving the gun behind some electronics, a loaded handgun behind some electronics in the Goodwill store where it's accessible to anyone who came through there, like a child who was looking for an electronic toy. And, you know, I think you're right. Obviously the legislature could create a defense. And I think you'd mentioned the drop boxes for the cannabis at the airport. Someone had told me about those recently. They're all over the place. Aren't they cardboard? No, no. They're actually very sturdy. Okay. But I shudder to think as to what type of lock box somebody is going to drop a loaded handgun into. You know, you look at, you know, like you want to put it in. You know that some jurisdictions in Illinois have amnesty boxes for guns. Many jurisdictions have made particular kinds of guns unlawful. And they appreciate that people may not want to hand them in to the police. But they have made lock boxes available to drop your unlawful gun into. And it's not an unusual idea, and it's certainly not limited to marijuana. And it may not be an unusual idea, but I think it would be unusual to have a box in some deserted corner in a Goodwill store. Yeah, that might be unlikely. Yeah, look, if there's going to be a lock box or some way that you can come and there's no question to ask, kind of like these gun buybacks. You know, you bring a gun in. You get a gift certificate. There's no questions asked, you know. If there were to be a provision like that and it were run and operated by law enforcement, which these gun buybacks I believe largely are, you know, where you bring a gun in, maybe call in advance. You bring a gun in to the police department. You talk with somebody. You surrender the firearm. No questions asked. That's a process by which I think we could probably, you know, certainly I think is more reasonable than what we're talking about here. But, you know, we look at these other cases, the cases that the circuit has addressed. You know, you have the defendant who didn't immediately tell the police officers about the gun under the seat in Hendricks. You have Kilgore who took the gun from his brother after he was involved in a shooting, and then after convincing his brother to go to the hospital, he or somebody else threw it in a snowbank. You have Jackson who the gun was in a computer case. He gave it to his felon mother with the hope that eventually somewhere downstream it would end up in safe and secure hands. You have Terry who dropped the gun in the grass, and that's after somebody pointed it at him. He disarmed this person. He dropped the gun in the grass as law enforcement were approaching, and he didn't say anything about it. So what I'm, I mean, of course, litany of cases, if there were an innocent possession defense, the gist of what you're saying is that the criteria for applying it would remain narrow, and it would be even narrower if you had to actually give it to the police, which leads me back to the problem in front of us, namely Mr. Sorenson. And it's hard for me to see why we should use this case as some platform for a grand announcement about innocent possession if everybody kind of agrees Mr. Sorenson wouldn't qualify anyway. First off, the government's position is not that we're not asking that you adopt the innocent possession defense. Our position is that it has been declined and it's not there. So that's our official position. But we can keep it on the back burner. I mean, we don't need to repudiate it either, do we? Correct, and I think that was the defense argument is that this has kind of been percolating out there on standby. But in terms of what needs to happen about, and I hope I'm addressing your question, but in terms of what needs to happen with the gun and the reasonableness, in this particular case, this should be like the other five or so cases since 2001 where this court simply takes a look at it and says the district court was correct in declining the motion for an affirmative defense for legal reasons, meaning it doesn't exist, number one. And number two, even if that court were to, even if the district court were to have gotten down to the facts and whether or not that scintilla evidence had been presented, even if the district court judge got to that point, there are not sufficient facts allowing the defense. So there really is a twofold reason that this court should deny the defendant's motion here and affirm the district court. So really, that is kind of where the government lands in this case. First off, it's not a defense. Second, the facts don't apply. We agree with some of the questions that were asked here. It wasn't his car. He was driving around in it. And really, he argues that he didn't want anything to do with guns. He wanted nothing to do with guns, but yet the best thing for him to have done, if he really wanted nothing to do with guns, would have been to have locked the keys in the car, parked it somewhere safe, walked away, and called the police. How did you see the article in this week's New York Times, the survey that was taken? Most guns that get into the wrong hands are because people steal cars. People lock their guns in cars and then somebody steals the car. You want to have this guy lock it in the car? Well, I agree with you, Judge, that I didn't read that specific article, but I know that that's a big problem in Madison, that a lot of guns come from people who, you know, Then we shouldn't have suggested that was what this guy should have done. Yeah, so maybe that should have been, you know, take it to a police department, lock the keys in the car, walk away, and call the non-emergency number and say, Hey, listen, somebody lent me this car last night. You know, I am no longer with the person. I don't know what to do with the car. I found a gun in it. But, you know, we're not even in that territory here. I mean, so we're in the land where, you know, And you're confident that the police would not search the car for fingerprints? Certainly I'm not hearing a prosecutor suggest that what you first do is wipe all your fingerprints off the car, having stolen the car and found a gun, and then walk away. That doesn't sound like a criminal prosecutor's suggestion. Well, of course. His position, the defendant's proffer, is that he didn't steal the car. He was given limited consent to drive it. By somebody who didn't own it. Correct. So it's a stolen car. It is a stolen car, yes. And I think I wrote that in the brief. What the defendant is asking is he's asking for the ability to steal a car, take a gun that he found from that car, and then leave it behind electronics on the shelf in the Goodwill. So the government's position is that for the two reasons I stated, that this case should be affirmed for the two reasons. First, legally it's not a defense. Second, factually it just doesn't even match with Mason. So unless there are any questions, the government rests on its brief. Do you have anything further, Ms. Attenborough? I'll give you a minute. Thank you, Your Honor. To pick up where Mr. Stephan left off, this is the case to identify the defense. The stolen car is a non-issue. Just look at Hendricks. This court had said that somebody who happens upon a firearm in a car that does not belong to them still creates a jury question on that element. So Hendricks alone resolves that issue. Mason speaks to the fact that whether somebody has acted in possessing the firearm on a transitorily to give it to the right person is also a jury question. We trust juries to determine what is reasonable, and that's what should happen here. The court should recognize the defense, identify its elements, and send this case back to the jury so that Mr. Sorensen has a chance to present his side of the story. If there's no further questions, thank you. Thank you very much.